OPINION
Appellant, Jacob E. Willis, appeals from a decision of the Clark County Common Pleas Court granting summary judgment in favor of appellee, Lightning Rod Mutual Insurance Company (hereinafter Lightning Rod). The trial court found that Lightning Rod was not liable for the tortious acts of its insured, Jamie Campbell, because of an exclusion in its policy against coverage of "expected or intended" injuries. It also found that Lightning Rod was not liable on behalf of Fred Campbell, the father of Jamie Campbell, because Jamie's intentional act was not an "occurrence" giving rise to personal-liability coverage under the policy. We agree with the trial court that the insurance company was not liable for Willis' claims under the policy. Accordingly, we affirm the judgment below.
 I.
The incident giving rise to the instant case occurred at about 2:40 a.m. on August 17, 1992, when defendant, Jamie Campbell, fired a number of shots from a .22 caliber rifle, two of which struck and injured Jacob Willis. Jamie Campbell was fourteen years old at the time of the incident. Jacob Willis was fifteen.
Jamie Campbell testified in a sworn statement about the events leading up to the incident. He explained that, shortly after midnight, on the morning of August 17, he was driving with friends around downtown Springfield. While driving around, Campbell said, they saw a man being attacked by a large group of boys. According to the statement, Campbell and his friends stopped to help the man, and eventually fled with him when one of the attackers threatened them with a pistol.
Campbell said that more friends later joined him, and the larger group then returned to the scene of the initial confrontation, this time in two cars. One of Campbell's friends brought a handgun with him. They found the other group of boys nearby, but fled again when the same boy threatened them with a pistol.
Campbell and his friends then stopped to pick up a rifle and sought out the other gang of boys again. Campbell testified that they found four or five of them parked in an alley. They drove by the parked car several times and then stopped. He said that one of them, Jacob Willis, got out of the car and asked, menacingly, "Is something wrong?" He identified Willis as the same boy who had earlier pointed the pistol at him. One of Campbell's friends yelled, "Shoot!" Then, as the car that he was riding in began to pull away, Campbell grabbed the rifle and fired shots at the other car, injuring Jacob Willis, who was standing behind the car door.
Jacob Willis testified in a deposition that there was only one other person with him when he got shot. His testimony also indicated that he was not involved in the earlier confrontations with Campbell and that he never threatened him with a pistol. He also stated that he didn't think Campbell was trying to shoot him, but accidentally hit him when shooting at the car.
On February 20, 1996, Willis filed a complaint for personal injuries against Jamie Campbell, for negligence, and his father Fred Campbell, for negligent supervision. Fred Campbell had a homeowner's insurance policy with the Lightning Rod insurance company that insured both father and son against personal liability. Lightning Rod moved to intervene in the suit, which motion was granted by the trial court. Lightning Rod filed a complaint and counter-claim for a declaratory judgment on September 18, 1996. It then moved for summary judgment. The trial court granted Lightning Rod's motion for summary judgment on April 25, 1997, finding that the company was not liable for any of Willis' claims. Jacob Willis now appeals from that judgment.
 II.
As his sole assignment of error, appellant contends that:
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT, AS THERE WAS A GENUINE ISSUE OF MATERIAL FACT.
 The trial court granted summary judgment in favor of Lightning Rod because it found that the terms of the Campbell's homeowner's insurance policy did not cover the events of August 17, 1992. There are three portions of the policy particularly relevant to the trial court's determination. The first is contained in Section II of the policy under "Liability Coverage." It reads:
 If a claim is made or a suit brought against an insured
for damages because of bodily injury or property damage
caused by an occurrence to which this coverage applies, we will:
 1. Pay up to our limit of liability for the damages for which the insured is legally liable. Damages include prejudgment interest awarded against the insured.
 2. Provide a defense at our expense by counsel of our choice * * *.
 The "Definitions" section of the policy defines "occurrence" as follows:
 "occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
a. bodily injury; or
b. property damage.
 The third relevant section falls among the exclusions listed in Section II. It states:
 Coverage E — Personal Liability and Coverage F — Medical Payments to Others do not apply to bodily injury or property damage:
a. Which is expected or intended by the insured;
* * *
 The trial court found that appellant's injuries were either expected or intended by Jamie Campbell and, therefore, were excluded from personal-liability coverage. It further found that, because Jamie's acts were intentional, the claim against his father for negligent supervision failed because it did not constitute an "occurrence," something defined as an "accident" within the policy.
Willis argues that the trial court erred in granting summary judgment in favor of Lightning Rod because there was an issue of fact as to Jamie Campbell's intentions in firing the rifle. An appellate court reviews a grant of summary judgment de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Summary judgment is appropriate only if (1) "no genuine issue of material fact" exists, (2) "the moving party is entitled to judgment as a matter of law," and (3) it appears from the record that "reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made." Civ.R. 56(C). The party seeking summary judgment must inform the court of the basis for the motion and identify elements in the record that show an absence of any issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280,293. The non-moving party then has a reciprocal burden of producing evidence to show such issues exist. See id.
Lightning Rod points to the sworn statement of Jamie Campbell in which the boy described deliberately picking up the rifle and firing four bullets, in response to the earlier altercations. Therein, Campbell also admitted that he was not firing warning shots. From this evidence, Lightning Rod argues that appellant's injuries were excluded from coverage by the policy's exclusion against injuries "intended or expected" by the insured. Appellant responds by noting that Campbell specifically said that he was aiming at the car, not at Willis. Thus, he argues that, although the firing of the gun was intentional, there exists an open question as to whether Campbell actually intended to do injury.
In Physicians Ins. Co. v. Swanson (1991), 58 Ohio St.3d 189,193, the Ohio Supreme Court adopted the majority rule for interpreting insurance-policy exclusions of intentional or expected injuries. That rule holds that, not only must the act precipitating liability be intentional, but the insured must intend or expect harm or injury to result from his act. See id.
The question before us, then, is whether Jamie Campbell's testimony that he fired at the car, and not at Willis, is sufficient to cast doubt on whether the result was intended or expected and, thereby create an issue of fact. We conclude that it is not.
In Gearing v. Nationwide Ins. Co., (1996), 76 Ohio St.3d 34,38-39, the Supreme Court made clear that the Swanson holding did not mandate that an insurance company's liability should hinge solely upon a court's determination of the subjective intent of the insured tortfeasor. In the Gearing opinion, the Court held that:
 in those cases where an intentional act is substantially certain to cause injury, determination of an insured's subjective intent, or lack of subjective intent, is not conclusive of the issue of coverage. Rather, an insured's protestations that he "didn't mean to hurt anyone" are only relevant where the intentional act at issue is not substantially certain to result in injury.
 No reasonable person can suppose that the act of firing a .22 caliber rifle four or more times into an occupied automobile is not substantially certain to result in injury to its occupants. Because there is no dispute as to this essential factual circumstance, we cannot but conclude that the exclusion against intended or expected injuries operates in the instant case. Accordingly, Lightning Rod cannot be held liable for appellant's injuries.
Lightning Rod also advances separate arguments in regard to its liability under the "occurrence" and "accident" provisions of the policy. However, these provisions are subject to the same analysis as the exclusion against coverage of intentional injuries. Court's have treated provisions like these as establishing, essentially, the same limits on personal liability coverage. In Swanson, the Supreme Court examined two different insurance policies, one containing an "intended or expected" exclusions and one limiting coverage to accidents. 58 Ohio St. 3d. at 190-91. The court declared that the "effect of both policies is the same" and they should be treated "in like manner."Id. at 191. See also Gearing, 76 Ohio St.3d at 38 (finding that "occurrence" and "accident" have identical meanings in this context). Thus, the provisions in the Campbell's policy limiting personal-injury coverage to "occurrences" or "accidents" are identical in effect to, and redundant with, the exclusion analyzed above.
In a separate argument, Appellant claims that, even if the insurance company is not required to indemnify Jamie Campbell for the injuries he caused intentionally, it must still indemnify Jamie's father, Fred Campbell, against appellant's claim of negligent supervision. We disagree. Appellant's claims arise from an injury intended or expected by an insured, and are therefore excluded from coverage. Appellant cannot overcome that exclusion by making derivative claims of negligence against another person insured under the policy. See Cuervo v. CincinnatiIns. Co. (1996), 76 Ohio St.3d 41, 44.
For the foregoing reasons, we find that Lightning Rod Insurance Company was not liable to the appellant for any of his injuries. Thus, the court did not err in rendering summary judgment in the company's favor.
Judgment Affirmed.
WOLFF, J., and FAIN, J., concur.
Copies mailed to:
Joseph M. Juergens
Paul J. Winterhalter
W. Charles Curley
Hon. Gerald Lorig