OPINION
{¶ 1} Appellant, Brian Michalko, appeals from the April 21, 2004 judgment entry of the Portage County Court of Common Pleas, granting appellee's, Fire Insurance Exchange's, motion for summary judgment.[1]
 {¶ 2} On November 12, 2002, Plaintiff Kevin Wight ("Wight"), filed a complaint against appellant, alleging that he sustained injuries caused by appellant's negligent and/or reckless conduct arising out of an incident which occurred on November 10, 2001. Appellant filed an answer on February 28, 2003.[2]
 {¶ 3} On March 13, 2003, appellee filed a motion to intervene pursuant to Civ.R. 24, which was granted by the trial court on March 14, 2003. On April 21, 2003, appellee filed the instant complaint against appellant for declaratory judgment, regarding whether it had a duty to defend and/or indemnify appellant. Appellant filed an answer on May 9, 2003.
 {¶ 4} On October 31, 2003, appellee filed a motion for summary judgment pursuant to Civ.R. 56. Appellant filed a brief in opposition to appellee's motion for summary judgment on December 15, 2003.
 {¶ 5} On November 10, 2001, appellant, a twenty-two year old Kent State student, got off of work as a bouncer at Mugs in Kent, Ohio, and met some friends at the Clubhouse, also in Kent. At approximately 3:00 a.m., brothers Eric and Christopher Wyman showed up at the Clubhouse with their girlfriends. According to appellant's deposition, Eric Wyman was a "bloody mess" and had been allegedly assaulted earlier that evening. Appellant testified that Christopher Wyman indicated that they were going to go to a house on South Water Street, where it was believed that the perpetrator of the assault lived. Appellant agreed that he would accompany them.
 {¶ 6} Outside the house, although appellant could not see whether anyone was inside, he could hear voices and it sounded like a party was occurring. As appellant walked up the driveway, he picked up a rock which weighed about five pounds, and threw it towards a first floor window. The rock hit and injured Wight. Appellant said that he went into the house after he heard the glass break and observed Wight, whom he did not know, lying on the kitchen floor. Appellant stated that he did not intend to hit or hurt anyone, but did intend to throw the rock into the house because he was angry.
 {¶ 7} Appellant was later indicted, in Case No. 2002 CR 0134, on one count of felonious assault, in violation of R.C. 2903.11, a felony of the third degree. In August 2002, appellant entered a guilty plea to a lesser charge, one count of aggravated assault, in violation of R.C. 2903.12, a felony of the fourth degree. It was after appellant's sentencing that Wight filed his civil complaint.
 {¶ 8} Pursuant to its April 21, 2004 judgment entry, the trial court granted appellee's motion for summary judgment.[3] It is from that judgment that appellant filed a timely notice of appeal and makes the following assignment of error:
 {¶ 9} "Under the facts of this case it was an abuse of discretion for the Court to grant summary judgment in favor of [appellee] seeking to avoid a defense and coverage based upon the `intentional acts' exclusion in its policy[.]"
 {¶ 10} In his sole assignment of error, appellant argues that the trial court abused its discretion by entering summary judgment in favor of appellee. Appellant contends that appellee sought to avoid a defense and coverage based upon the "intentional acts" exclusion in its policy. Appellant maintains that insurance contract law should not be decided by criminal prosecutions. Appellant stresses that the policy exclusion includes a standard of "reasonably foreseeable," a term which begs for a factual determination on a case by case basis.
 {¶ 11} In order for a summary judgment to be granted, the moving party must prove:
 {¶ 12} "* * * (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." Mootispaw v. Eckstein
(1996), 76 Ohio St.3d 383, 385.
 {¶ 13} The Supreme Court stated in Dresher v. Burt (1996),75 Ohio St.3d 280, 296, that:
 {¶ 14} "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifyingthose portions of the record which demonstrate the absence of a genuineissue of fact on a material element of the nonmoving party's claim. The `portions of the record' to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case. * * *" (Emphasis sic.)
 {¶ 15} If the moving party satisfies this burden, then the nonmoving party has the burden pursuant to Civ.R. 56(E) to provide evidence demonstrating a genuine issue of material fact. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate. Civ.R. 56(E). Appellate courts review a trial court's granting of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. The Brown court stated that "we review the judgment independently and without deference to the trial court's determination." Id. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." Link v. Leadworks Corp.
(1992), 79 Ohio App.3d 735, 741. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id.
 {¶ 16} This court stated in Ridgway v. Grange Mut. Cas. Co. (Apr. 19, 2002), 11th Dist. No. 2001-P-0067, 2002 Ohio App. LEXIS 1919, at 3, that:
 {¶ 17} "[t]he construction of an insurance contract is a matter of law. Nationwide Mut. Ins. Co. v. Eckmeyer (2001), 145 Ohio App.3d 753, [756] * * *. In construing an insurance contract, a court should attempt to determine the intention of the parties and, if the language of the policy is unambiguous, it should be enforced as written. Id. However, if a provision is open to more than one interpretation, it should be construed against the insurer and in favor of the insured. Id."
 {¶ 18} In the case at bar, Section II, Coverage E, of the insurance policy at issue provides that: "[w]e will pay those damages which aninsured becomes legally obligated to pay because of bodily injury,property damage or personal injury resulting from an occurrence to which this coverage applies. * * *"
 {¶ 19} "Occurrence" is defined in the definitions section of the policy as: "* * * an accident including exposure to conditions which results during the policy period in bodily injury or property damage. * * *"
 {¶ 20} Thus, the first condition that must be satisfied for liability coverage is that the injuries must flow from an "accident." Liability coverage is then subject to certain exclusions.
 {¶ 21} The exclusions section of the policy, Applying to Coverage E and F, provides that:
 {¶ 22} "[w]e do not cover bodily injury, property damage or personal injury which:
 {¶ 23} "* * *
 {¶ 24} "3. is either:
 {¶ 25} "a. caused intentionally by or at the direction of an insured;
or
 {¶ 26} "b. results from any occurrence caused by an intentional act of any insured where the results are reasonably foreseeable."
 {¶ 27} In Motorists Mut. Ins. Co. v. Manning (Aug. 8, 1997), 11th Dist. No. 96-G-1999, 1997 Ohio App. LEXIS 3581, at 8, this court stated that:
 {¶ 28} "the submission of a guilty plea to a criminal charge, for a crime of which intent is an essential element, is strong enough proof so as to eliminate all doubt as to whether an insured's conduct would be deemed `intentional' for purposes of an `intentional act' exclusion.Preferred Risk Ins. Co. v. Gill (1987), 30 Ohio St.3d 108, 115 * * *. The rule is, in substance, analogous to the type of case at bar, where we have been directed by the Supreme Court to reach a decision under the definition of `occurrences' rather than under `intentional act' exclusions."
 {¶ 29} We further indicated in Manning, supra, at 19, that: "the question whether an act is `intentional' for the purposes of an `intentional act' exclusion is quite similar to the question whether an act is `accidental' for purposes of defining an `occurrence.'"
 {¶ 30} With respect to the instant matter, appellant entered a guilty plea to aggravated assault, in violation of R.C. 2903.12(A)(2), which provides in pertinent part that: "[n]o person * * * shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance * * *."
 {¶ 31} The culpable mental state of "knowingly" is defined in R.C.2901.22(B), which states that: "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 32} Appellant's reliance on Physicians Ins. Co. of Ohio v. Swanson
(1991), 58 Ohio St.3d 189, is misplaced. In Swanson, the Supreme Court of Ohio ruled that an insurer was obligated to defend and indemnify a teenage boy who shot a BB gun in the general vicinity of a group of other teenagers, not intending to hit anyone, but striking one of the teens in the eye. The court specifically held that in order to avoid coverage under an intentional acts exclusion, it was not sufficient to show that the act was intentional, but rather "the insurer must [also] demonstrate that the injury itself was expected or intended." Id. at syllabus. We must stress, however, that unlike the insured here, the insured inSwanson did not intend to cause any harm, nor was harm substantially certain to occur from his actions. In addition, the appellant inSwanson, unlike appellant in the case sub judice, did not plead guilty to a charge which included the essential element that he acted knowingly. See Manning, supra, at 11-12.
 {¶ 33} "`[A] criminal conviction, in and of itself, may conclusively establish intent for purposes of applying an intentional-acts exclusion.'" Campobasso v. Smolko, 9th Dist. No. 3259-M, 2002-Ohio-3736, at ¶ 12, quoting Allstate Ins. Co. v. Cole (1998), 129 Ohio App.3d 334,336. "Significantly, a conviction involving the culpable mental state of knowingly is sufficient to trigger an intentional-acts exclusion * * *." Smolko, supra, at ¶ 12, citing Nationwide Mut. Fire Ins. Co. v.Carreras (Nov. 15, 1995), 9th Dist. No. 95CA006031, 1995 WL 678556, at 3.
 {¶ 34} Five years after Swanson, the Supreme Court of Ohio in Cuervov. Cincinnati Ins. Co. (1996), 76 Ohio St.3d 41, encountered the issue of whether liability insurance covered a father's negligent conduct in failing to properly supervise his minor son, who sexually abused two minor children. The court of appeals ruled that liability insurance applied because there was no evidence that the father expected or intended any harm to occur to the minor children. However, the Supreme Court reversed and held that it is immaterial that an insured did not intend to cause injury when the plaintiffs' damages "flow from" the otherwise intentional acts of others that do not constitute an "occurrence" under the policy. Id. at 43-44. Therefore, since the damages to the minor children resulted from the intentional, criminal acts of the minor son, there was no "occurrence" and, thus, there could be no coverage.
 {¶ 35} Here, appellant knowingly picked up a five pound rock and threw it through a first floor window into a home that he knew was filled with partygoers. As such, it was reasonably foreseeable that someone would be struck and injured due to appellant's intentional act. Appellant's guilty plea further constitutes evidence that his conduct was not "accidental." See Manning, supra, at 8. One who knowingly commits aggravated assault necessarily does so with the expectation that harm will result. WesternReserve Mut. Ins. Co. v. Campbell (1996), 111 Ohio App.3d 537, 542.
 {¶ 36} Again, appellant pleaded guilty to aggravated assault. A conviction for aggravated assault involves the culpable mental state of knowingly. R.C. 2903.12(A)(2). Pursuant to R.C. 2901.22(B), one's specific purpose is irrelevant with respect to "knowingly." The policy at issue provides that coverage may be excluded for acts which are either intentional or result from an occurrence caused by an intentional act where the results are reasonably foreseeable. Appellant's conviction involving the mental state of knowingly is sufficient to trigger the exclusion. Smolko, supra, at ¶ 12; Carreras, supra, at 3.
 {¶ 37} Based on Mootispaw, supra, it was proper for the trial court to conclude that summary judgment was appropriate.
 {¶ 38} For the foregoing reasons, appellant's sole assignment of error is not welltaken. The judgment of the Portage County Court of Common Pleas is affirmed.
Grendell, J., Rice, J., concur.
[1] Appellee is a member company of Farmers Insurance of Columbus, Incorporated.
[2] Appellant's answer was submitted by his counsel and by an attorney who was hired by appellee to represent him. Appellee is appellant's parents, Paul and Patricia Michalko's, homeowner's insurance carrier.
[3] The trial court noted in its judgment entry that the matter regarding Wight's claims against appellant were still pending.